Filed in Furnas District Court
*** EFILED ***
Case Number: D38CI150000090
Transaction ID: 0003158736
Filing Date: 12/16/2015 01:43:15 PM CST

## District Court, Furnas County, Nebraska

| | |
|---|---|
| **Dale Helms and Debra J. Helms,** | Case No. 15-_____ |
| **Plaintiffs,** | |
| v. | **Complaint & Jury Demand** |
| **Old Republic National Title Insurance Company,** | |
| **Defendant.** | |

Plaintiffs allege:

### Overview

1. On or before August 23, 2012, Old Republic National Title Insurance issued an Owner's Policy of Title Insurance ("Policy") to Dale Helms and his spouse, Debra J. Helms, for 219 acres of cropland with irrigation potential located in Furnas County, Nebraska. The Policy had an effective date of October 15, 2012 and claimed to inform parties of all encumbrances on the Furnas County land. The Policy failed to show twenty-two (22) acres of the cropland were owned by the U.S. Government as an easement and the landowner would be limited in making any changes to the landscape, elevation, or gradation of the land.

2. The easement substantially decreased the land's value. Plaintiffs planned on irrigating the land, purchased water rights at great expense, changed the terrain of the land, and purchased a pivot to irrigate at least seventy-five (75) acres. After completing these steps to farm the land, Plaintiffs were notified by the US Government that it owned a twenty-two (22) acre easement, the changes made to the land were not permitted, and the land would need to be returned to its original state at Plaintiffs' cost. The easement should have been disclosed by the Policy.

3. The Helms sue for damages because of the Policy's errors.

**EXHIBIT 1**

### Jurisdiction, Venue, Parties

4. The District Court has subject matter jurisdiction of this action pursuant to its general jurisdictional authority, *Neb Rev Stat* § 24-302.

5. Venue is appropriate in Furnas County, where the insured property is located, Plaintiff has a residence, and Defendant provided coverage for insured assets. These actions make venue in Furnas County proper. *Neb Rev Stat* § 25-403.01.

6. The Plaintiffs are Dale Helms and his spouse, Debra J. Helms, both Nebraska residents. Mr. and Mrs. Helms were the users of the Policy and relied on it to complete the sale transaction for the land. Mr. and Mrs. Helms are the people identified as insured by Old Republic National Title Insurance Company, policy number 0X652136.

7. The Defendant is Old Republic National Title Insurance Company. Its office is located at 400 Second Avenue South, Minneapolis, Minnesota, 55401.

### The Insurance Policy

8. In 2012, as confirmed by a letter incorrectly dated as 2013, McCook Abstracting procured a title insurance policy from Old Republic as its agent and caused it, or a binder for it, to be issued to Plaintiffs. Plaintiffs were the purchasers of a farm for which title coverage was sought. This Policy provides title insurance from any nondisclosed defects or encumbrances not disclosed in the title insurance policy for the property described as the

SE ¼ and the E ½ of the SW ¼, Section 12, Township 4 North,

Range 24 West of the 6th PM, Furnas County, Nebraska.

The Policy had an effective date of 8:00 A.M. on October 15, 2012.

9. A copy of the Insurance Policy, Policy Number 0X652136, with its Declaration pages is attached to this Complaint marked as **Exhibit 1**. The Policy is made a part of this Complaint.

10. The Policy was issued by Old Republic National Title Insurance Company through its licensed agent and agency, McCook Abstract Company, McCook, Nebraska.

McCook Abstract was authorized and licensed to act on behalf of the Defendant as its agents at all relevant time. It did so.

11. The Policy provided insurance coverage in the amount of $513,520 against:

"loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

1. Title being vested other than as stated in Schedule A.
2. Any defect or lien or encumbrance on the Title. This Covered Risks includes but is not limited to insurance against loss from…
7. The exercise of rights of eminent domain if a notice of the exercise, describing any part of the Land, is recorded in the Public Records.
8. Any taking by a governmental body that has occurred and is binding on the rights of the purchaser for value without Knowledge.

The Company will also pay the costs, attorney's fess, and expenses incurred in defense of any matter insured against by this Policy, but only to the extent provided in the Conditions."

12. Plaintiffs relied, to their detriment, on the Policy and believed they were receiving an unencumbered piece of land that could be converted to irrigated cropland. They closed on the purchase of the land on October 15, 2012. After purchasing the land, they purchased water rights, changed the elevation and drainage of the land, and purchased and installed a pivot to operate on the land.

13. The Policy did not describe the US Government's easement in the property taken by condemnation proceedings in the 1940s. The condemnation proceedings were of public record and were readily identifiable. Only later, after efforts to improve the land were made did Plaintiffs become aware of the US Government's property rights in the land.

### Breach of Contract

14. All allegations above are renewed here.

15. The insurance contract Policy did not describe all encumbrances on the land and did not include the US Government's 22-acre interest.

16. Plaintiffs timely made demand on the Policy on October 14, 2015, for their loss. Defendant has refused to pay their demand or provide benefits under the Policy. It has breached the Policy by failing to do so.

CH2121

17. As a direct, proximate result of Defendant's breach of its contractual obligations by refusing to pay benefits under the Policy, Defendant has breached its contractual obligations to Plaintiffs and caused Plaintiffs to sustain damages for the lost value of the real estate not conveyed to them and the diminished value of the real estate that was actually conveyed.

18. Plaintiffs reasonably performed all their contractual obligations to Defendant. They paid all premiums in full.

19. Defendant's breach of the Policy has caused Plaintiffs to sustain losses for these amounts, which represent sums due to Plaintiffs under the insuring provisions of the Policy:

| Description | Amount |
|---|---|
| FMV of Acres Sold But Owned by Federal Government (21 ac x $4,800 / ac) | $100,800.00 |
| Loss of FMV for Acres That Would Have Been Irrigated But Must Now Be Dry crop land | $171,839.34 |
| Discount for Dry crop Acres Not Actually Paired w/ Irrigated Acres ($500 /ac x 133 ac) | $55,500.00 |
| Consequential Damages for Investment In Pivot (Installation and Removal) | $33,000.00 |
| Consequential Damages for Purchased Surface Water Rights That Could Not Be Used Because of US Government's Easement (123.4 acres & $950 / ac = $117,230.00 | $117,230.00 |
| Consequential Damages for Purchase and Resale of Pivot | $10,900.00 |
| Costs to Contour and Shape Government Land and to Restore Land original status | $36,000.00 |
| Legal Costs to Attempt to Mitigate Damages | $10,000.00 |
| **Damages** | **$535,269.34** |

Total damages are in excess of the Policy Limit of $513,520.

20. As further, direct, proximate results of the Defendant's breaches, Plaintiffs were compelled to engage legal counsel, conduct and pay for an investigation, and incur past and accruing litigation costs, fees, and expenses. These are estimated to total at least

4

CH2121

one-third (1/3) of the Plaintiffs' claims. Defendant is obligated to pay these costs, fees, and expenses pursuant to *Neb Rev Stat* § 44-359.

## Requests for Relief

21.  On the foregoing basis, Plaintiffs request judgment for:

    21.1.  All damages owing and due under the insurance policy for $513,520;

    21.2.  Prejudgment interest to the extent permitted by law;

    21.3.  Fees for the services of the Plaintiffs' lawyers and litigation expenses, including fees for court costs, expert witnesses, travel, and other expenses necessarily incurred or to be incurred to prosecute this litigation on all claims;

    21.4.  Taxable costs.

## Jury Demand

22.  Plaintiffs respectfully demand trial by jury.

December 16, 2015.

                      Dale Helms and Debra J. Helms,
                      Plaintiffs

By:_____
    David A. Domina, #11043
    Christopher A. Mihalo, #24705
    DOMINALAW Group pc llo
    2425 S. 144th St.
    Omaha, NE 68132
    402-493-4100
    ddomina@dominalaw.com

    *Plaintiffs' Lawyers*

CH2121

# OWNER'S POLICY OF TITLE INSURANCE



Policy Number **OX 652136**

Issued by Old Republic National Title Insurance Company

**Any notice of claim and any other notice or statement in writing required to be given to the Company under this Policy must be given to the Company at the address shown in Section 18 of the Conditions.**

## COVERED RISKS

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY, a Minnesota corporation (the "Company") insures, as of Date of Policy and, to the extent stated in Covered Risks 9 and 10, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

1. Title being vested other than as stated in Schedule A.

2. Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from:
    (a) A defect in the Title caused by
        (i) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;
        (ii) failure of any person or Entity to have authorized a transfer or conveyance;
        (iii) a document affecting Title not properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;
        (iv) failure to perform those acts necessary to create a document by electronic means authorized by law;
        (v) a document executed under a falsified, expired, or otherwise invalid power of attorney;
        (vi) a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or
        (vii) a defective judicial or administrative proceeding.
    (b) The lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid.
    (c) Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.

3. Unmarketable Title.

4. No right of access to and from the Land.

5. The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
    (a) the occupancy, use, or enjoyment of the Land;
    (b) the character, dimensions, or location of any improvement erected on the Land;
    (c) the subdivision of land; or
    (d) environmental protection
if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.

Countersigned:

**OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY**
A Stock Company
400 Second Avenue South, Minneapolis, Minnesota 55401
(612) 371-1111

_____
*Authorized Officer or Licensed Agent*

By _____ President

Attest _____ Secretary

ORT Form 4309
ALTA Owners Policy of Title Insurance 6-17-06

6. An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice.

7. The exercise of the rights of eminent domain if a notice of the exercise, describing any part of the Land, is recorded in the Public Records.

8. Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge.

9. Title being vested other than as stated in Schedule A or being defective

    (a) as a result of the avoidance in whole or in part, or from a court order providing an alternative remedy, of a transfer of all or any part of the title to or any interest in the Land occurring prior to the transaction vesting Title as shown in Schedule A because that prior transfer constituted a fraudulent or preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws; or
    (b) because the instrument of transfer vesting Title as shown in Schedule A constitutes a preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws by reason of the failure of its recording in the Public Records
        (i) to be timely, or
        (ii) to impart notice of its existence to a purchaser for value or to a
        judgment or lien creditor.

10. Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 9 that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The Company will also pay the costs, attorneys' fees, and expenses incurred in defense of any matter insured against by this Policy, but only to the extent provided in the Conditions.

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

    (i) the occupancy, use, or enjoyment of the Land;
    (ii) the character, dimensions, or location of any improvement erected on the Land;
    (iii) the subdivision of land; or
    (iv) environmental protection;

or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
(b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3. Defects, liens, encumbrances, adverse claims, or other matters

    (a) created, suffered, assumed, or agreed to by the Insured Claimant;
    (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c) resulting in no loss or damage to the Insured Claimant;
    (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
    (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is

    (a) a fraudulent conveyance or fraudulent transfer; or
    (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

## OWNER'S POLICY OF TITLE INSURANCE

## ISSUED BY

## Old Republic National Title Insurance Company

## SCHEDULE A

Name and Address of Title Insurance Company:
**Old Republic National Title Insurance Company**
400 Second Avenue South
Minneapolis, MN 55401
File No.: **M009380**

Address Reference: **Land, Furnas County, NE**
Amount of Insurance: **$513,520.00**
Date of Policy: **October 15, 2012**, at **08:00am**

Policy No.: **OX652136**
Issued with Policy No. **LX948662**

Premium: **$1,235.50**

1.  Name of Insured:

    **Dale Helms and Debra J Helms, husband and wife**

2.  The estate or interest in the land which is covered by this policy is:

    **Fee Simple**

3.  Title to the estate or interest in the land is vested in:

    **Dale Helms and Debra J Helms, husband and wife**

4.  The land referred to in this policy is described as follows:

    **SEE ATTACHED EXHIBIT "A"**

Countersigned
Title Services of the Plains, LLC

By [signature]

*ALTA Owner's Policy (6-17-06)*
*Schedule A*

File # M009380

## Exhibit "A"

Tract 1: The Southeast Quarter and the East Half of the Southwest Quarter of Section 12, Township 4 North, Range 24 West of the 6th P.M., Furnas County, Nebraska

Tract 2: The Northeast Quarter of Section 9, Township 4 North, Range 24 West of the 6th P.M., Furnas County, Nebraska EXCEPT for a part described as follows: Beginning at the the northwest corner of the Northeast Quarter of Section 9, Township 4 North, Range 24 thence due East on the Section line 450 feet; thence due South to the center of Deer Creek; thence meandering West along Deer Creek to the Quarter Section line; thence due North to the place of beginning. Also EXCEPT a tract of land that was released more particularly described as follows: Beginning at the North Quarter corner of said Section 9, as the Point of Beginning; thence S 89° 16' 48" E on the North Line of said Northeast Quarter, 900.00 feet thence S 00° 13' 36" W 175.44 feet to a point on the arc of a nontangent 1,340.00 feet radius curve; thence Southwesterly on said 1,340.00 feet radius curve 578.78 feet; (chord bearing being S 51° 32' 10" W chord distance 574.29 feet); thence leaving said curve S 45° 09' 37" W 120.46 feet to the centerline of Deer Creek meandering Northwesterly and Southeasterly; thence N 27° 48' 34" W upstream and on said centerline 86.29 feet; thence S 81° 09' 50" W 63.29 feet; thence N 78° 28' 53" W 59.27 feet thence N 56° 24' 02" W 53.94 feet; thence S 87° 50' 36" W 160.21 feet to a point on the West Line of said Northeast Quarter; thence N 00° 13' 30" E on said West Line and leaving said Creek 526.56 feet to the Point of Beginning.

*Tract #1 is the property I purchased from Fae Long. Sec 12-4N-24*

*Tract #2 is my Home place Sec 9-4N-24W*

## OWNER'S POLICY OF TITLE INSURANCE

### Issued By

### Old Republic National Title Insurance Company

### SCHEDULE B

Date of Policy: **October 15, 2012**

Policy No. **OX652136**  File No: **M009380**

Any provisions in the conditions and stipulations of this policy referring to Arbitration are hereby deleted.

This policy does not insure against loss or damage by reason of the following:

1. Facts which would be disclosed by a comprehensive survey of the premises herein described.

2. Mechanics', Contractors', or Materialmen's liens and lien claim, if any, where no notice thereof appears on record.

3. Rights and claims of parties in possession.

4. Easements, or claims of easements, not shown by the public records.

*Special Exceptions: Those defects disclosed by a search of the title to this property for which no coverage is provided by this policy).

5. • A Deed of Trust under an instrument described as "Trust Deed and Assignment of Rents" dated October 2, 2012 and Recorded October 15, 2012 in Book 103, Page 29, executed by Dale H. Helms aka Dale Helms and Debra J. Helms, husband and wife to AgriBank, FCB, Trustee and Farm Credit Services of America, FLCA, Beneficiary securing the principal sum of $500,000.00.

6. Taxes or special assessments which are not shown as existing liens by the public record.

7. General and special taxes and assessments as hereafter listed, if any (all amounts shown being exclusive of interest, penalties and costs):

    2011 Taxes Paid in full. 2012 Taxes Accruing. Special Assessments not yet of record.

8. Deed of Trust dated August 9, 1999, and recorded August 9, 1999, in Book 68, Page 361, executed by Dale H Helms and Debra Helms, husband and wife, to AgAmerica, FCB, Trustee and Farm Credit Services of America, FLCA, Beneficiary, securing the sum of $61,000.00. (Partial Reconveyance at Book 25, Page 390)

9. Deed of Trust dated March 19, 2003, and recorded March 26, 2003, in Book 77, Page 493, executed by Dale H Helms and Debra Helms, husband and wife, to AgriBank, FCB, Trustee and Farm Credit Services of America, FLCA, Beneficiary, securing the sum of $117,000.00.

10. Deed of Trust dated July 2, 2012, and recorded July 9, 2012, in Book 102, Page 295, executed by Dale H Helms aka Dale Helms and Debra J Helms, husband and wife, to AgriBank, FCB, Trustee and Farm Credit Services of America, FLCA, Beneficiary, securing the sum of $150,000.00. (with other land)

11. Terms and conditions of Easement recorded February 8, 1989, in Book B-6, Page 457 for right-of-way to Northwestern Bell Telephone Company, an Iowa Corporation.

*ALTA Owner's Policy (6-17-06)*
*Schedule B*

12. Title to minerals is not insured.

13. All reservations as reserved in patents issued by the United States of America and any and all reservations for minerals of any kind and type whatsoever and mineral conveyances and all rights arising from recorded or unrecorded oil, gas or other mineral leases of any kind and type whatsoever; and any mortgage and/or trust deeds wherein said mineral rights or oil and gas leases are used as security.

14. Rights of the public, State of Nebraska, County of Furnas in and to that portion of subject lands taken or used for road purposes, whether by easement or fee title.

15. The policy does not insure the right to maintain any boundary wall or fence located beyond the subject property.

**STIPULATIONS**

[redacted] **of Insurance**: The amount stated in Schedule A, as may be increased or decreased by endorsement to this policy, increased by Section 8(b), or decreased by Sections 11 and 12 of these Conditions.
(b) "Date of Policy": The date designated as "Date of Policy" in Schedule A.
(c) "Entity": A corporation, partnership, trust, limited liability company, or other similar legal entity.
(d) "Insured": The Insured named in Schedule A.
 (i) The term "Insured" also includes
   (A) successors to the Title of the Insured by operation of law as distinguished from purchase, including heirs, devisees, survivors, personal representatives, or next of kin;
   (B) successors to an Insured by dissolution, merger, consolidation, distribution, or reorganization;
   (C) successors to an Insured by its conversion to another kind of Entity;
   (D) a grantee of an Insured under a deed delivered without payment of actual valuable consideration conveying the Title
     (1) if the stock, shares, memberships, or other equity interests of the grantee are wholly-owned by the named Insured,
     (2) if the grantee wholly owns the named Insured,
     (3) if the grantee is wholly-owned by an affiliated Entity of the named Insured, provided the affiliated Entity and the named Insured are both wholly-owned by the same person or Entity, or
     (4) if the grantee is a trustee or beneficiary of a trust created by a written instrument established by the Insured named in Schedule A for estate planning purposes.
 (ii) With regard to (A), (B), (C), and (D) reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor Insured.
(e) "Insured Claimant": An Insured claiming loss or damage.
(f) "Knowledge" or "Known": Actual knowledge, not constructive knowledge or notice that may be imputed to an Insured by reason of the Public Records or any other records that impart constructive notice of matters affecting the Title.
(g) "Land": The land described in Schedule A, and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, alleys, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is insured by this policy.
(h) "Mortgage": Mortgage, deed of trust, trust deed, or other security instrument, including one evidenced by electronic means authorized by law.
(i) "Public Records": Records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge. With respect to Covered Risk 5(d), "Public Records" shall also include environmental protection liens filed in the records of the clerk of the United States District Court for the district where the Land is located.
(j) "Title": The estate or interest described in Schedule A.
(k) "Unmarketable Title": Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title to be released from the obligation to purchase, lease, or lend if there is a contractual condition requiring the delivery of marketable title.

2. **CONTINUATION OF INSURANCE**
The coverage of this policy shall continue in force as of Date of Policy in favor of an Insured, but only so long as the Insured retains an estate or interest in the Land, or holds an obligation secured by a purchase money Mortgage given by a purchaser from the Insured, or only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title. This policy shall not continue in force in favor of any purchaser from the Insured of either (i) an estate or interest in the Land, or (ii) an obligation secured by a purchase money Mortgage given to the Insured.

3. **NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT**
The Insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 5(a) of these Conditions, (ii) in case Knowledge shall come to an Insured hereunder of any claim of title or interest that is adverse to the Title, as insured, and that might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if the Title, as insured, is rejected as Unmarketable Title. If the Company is prejudiced by the failure of the Insured Claimant to provide prompt notice, the Company's liability to the Insured Claimant under the policy shall be reduced to the extent of the prejudice.

4. **PROOF OF LOSS**
In the event the Company is unable to determine the amount of loss or damage, the Company may, at its option, require as a condition of payment that the Insured Claimant furnish a signed proof of loss. The proof of loss must describe the defect, lien, encumbrance, or other matter insured against by this policy that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage.

5. **DEFENSE AND PROSECUTION OF ACTIONS**
(a) Upon written request by the Insured, and subject to the options contained in Section 7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those stated causes of action. It shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs, or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.
(b) The Company shall have the right, in addition to the options contained in Section 7 of these Conditions, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title, as insured, or to prevent or reduce loss or damage to the Insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable to the Insured. The exercise of these rights shall not be an admission of liability or waiver of any provision of this policy. If the Company exercises its rights under this subsection, it must do so diligently.
(c) Whenever the Company brings an action or asserts a defense as required or permitted by this policy, the Company may pursue the litigation to a final determination by a court of competent jurisdiction, and it expressly reserves the right, in its sole discretion, to appeal any adverse judgment or order.

## CONDITIONS AND STIPULATIONS (con't)

### 6. DUTY OF INSURED CLAIMANT TO COOPERATE

(a) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding and any appeals, the Insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, including the right to use, at its option, the name of the Insured for this purpose. Whenever requested by the Company, the Insured, at the Company's expense, shall give the Company all reasonable aid (i) in securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act that in the opinion of the Company may be necessary or desirable to establish the Title or any other matter as insured. If the Company is prejudiced by the failure of the Insured to furnish the required cooperation, the Company's obligations to the Insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

(b) The Company may reasonably require the Insured Claimant to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection, and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos whether bearing a date before or after Date of Policy, that reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Insured Claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect, and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage. All information designated as confidential by the Insured Claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Insured Claimant to submit for examination under oath, produce any reasonably requested information, or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

### 7. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY

In case of a claim under this policy, the Company shall have the following additional options:

(a) To Pay or Tender Payment of the Amount of Insurance.
To pay or tender payment of the Amount of Insurance under this policy together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay.
Upon the exercise by the Company of this option, all liability and obligations of the Company to the Insured under this policy, other than to make the payment required in this subsection, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

(b) To Pay or Otherwise Settle With Parties Other Than the Insured or With the Insured Claimant.

(i) To pay or otherwise settle with other parties for or in the name of an Insured Claimant any claim insured against under this policy. In addition, the Company will pay any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay; or

(ii) To pay or otherwise settle with the Insured Claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in subsections (b)(i) or (ii), the Company's obligations to the Insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

### 8. DETERMINATION AND EXTENT OF LIABILITY

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.

(a) The extent of liability of the Company for loss or damage under this policy shall not exceed the lesser of
 (i) the Amount of Insurance; or
 (ii) the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy.

(b) If the Company pursues its rights under Section 5 of these Conditions and is unsuccessful in establishing the Title, as insured,
 (i) the Amount of Insurance shall be increased by 10%, and
 (ii) the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as of the date it is settled and paid.

(c) In addition to the extent of liability under (a) and (b), the Company will also pay those costs, attorneys' fees, and expenses incurred in accordance with Sections 5 and 7 of these Conditions.

### 9. LIMITATION OF LIABILITY

(a) If the Company establishes the Title, or removes the alleged defect, lien, or encumbrance, or cures the lack of a right of access to or from the Land, or cures the claim of Unmarketable Title, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title, as insured.

(c) The Company shall not be liable for loss or damage to the Insured for liability voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

### 10. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY

All payments under this policy, except payments made for costs, attorneys' fees, and expenses, shall reduce the Amount of Insurance by the amount of the payment.

[heavily redacted text]

...Company... is taken
in Schedule B or to which [redacted] has agreed, assumed, or taken
subject, or which is executed by an Insured after Date of Policy and
which is a charge or lien on the Title, and the amount so paid shall be
deemed a payment to the Insured under this policy.

## 12. PAYMENT OF LOSS
When liability and the extent of loss or damage have been definitely
fixed in accordance with these Conditions, the payment shall be made
within 30 days.

## 13. RIGHTS OF RECOVERY UPON PAYMENT OR SETTLEMENT
(a) Whenever the Company shall have settled and paid a claim
under this policy, it shall be subrogated and entitled to the rights of
the Insured Claimant in the Title and all other rights and remedies
in respect to the claim that the Insured Claimant has against any
person or property, to the extent of the amount of any loss, costs,
attorneys' fees, and expenses paid by the Company. If requested
by the Company, the Insured Claimant shall execute documents to
evidence the transfer to the Company of these rights and remedies.
The Insured Claimant shall permit the Company to sue, compromise,
or settle in the name of the Insured Claimant and to use the name
of the Insured Claimant in any transaction or litigation involving
these rights and remedies.
If a payment on account of a claim does not fully cover the loss of
the Insured Claimant, the Company shall defer the exercise of its
right to recover until after the Insured Claimant shall have recovered
its loss.
(b) The Company's right of subrogation includes the rights of the
Insured to indemnities, guaranties, other policies of insurance, or
bonds, notwithstanding any terms or conditions contained in those
instruments that address subrogation rights.

## 14. ARBITRATION
Either the Company or the Insured may demand that the claim or
controversy shall be submitted to arbitration pursuant to the Title
Insurance Arbitration Rules of the American Land Title Association
("Rules"). Except as provided in the Rules, there shall be no joinder
or consolidation with claims or controversies of other persons.
Arbitrable matters may include, but are not limited to, any controversy
or claim between the Company and the Insured arising out of or relating
to this policy, any service in connection with its issuance or the breach
of a policy provision, or to any other controversy or claim arising out of
the transaction giving rise to this policy. All arbitrable matters when
the Amount of Insurance is $2,000,000 or less shall be arbitrated at the
option of either the Company or the Insured. All arbitrable matters
when the Amount of Insurance is in excess of $2,000,000 shall be
arbitrated only when agreed to by both the Company and the Insured.
Arbitration pursuant to this policy and under the Rules shall be binding
upon the parties. Judgment upon the award rendered by the Arbitrator(s)
may be entered in any court of competent jurisdiction.

## 15. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT
(a) This policy together with all endorsements, if any, attached to it
by the Company is the entire policy and contract between the
Insured and the Company. In interpreting any provision of this
policy, this policy shall be construed as a whole.
(b) Any claim of loss or damage that arises out of the status of the
Title or by any action asserting such claim shall be restricted to this
policy.
(c) Any amendment of or endorsement to this policy must be in
writing and authenticated by an authorized person, or expressly
incorporated by Schedule A of this policy.
(d) Each endorsement to this policy issued at any time is made a
part of this policy and is subject to all of its terms and provisions.
Except as the endorsement expressly states, it does not (i) modify
any of the terms and provisions of the policy, (ii) modify any prior
endorsement, (iii) extend the Date of Policy, or (iv) increase the
Amount of Insurance.

## 16. SEVERABILITY
In the event any provision of this policy, in whole or in part, is held
invalid or unenforceable under applicable law, the policy shall be
deemed not to include that provision or such part held to be invalid, but
all other provisions shall remain in full force and effect.

## 17. CHOICE OF LAW; FORUM
(a) Choice of Law: The Insured acknowledges the Company has
underwritten the risks covered by this policy and determined the
premium charged therefor in reliance upon the law affecting interests
in real property and applicable to the interpretation, rights, remedies,
or enforcement of policies of title insurance of the jurisdiction
where the Land is located.
Therefore, the court or an arbitrator shall apply the law of the
jurisdiction where the Land is located to determine the validity of
claims against the Title that are adverse to the Insured and to
interpret and enforce the terms of this policy. In neither case shall
the court or arbitrator apply its conflicts of law principles to determine the applicable law.
(b) Choice of Forum: Any litigation or other proceeding brought by
the Insured against the Company must be filed only in a state or
federal court within the United States of America or its territories
having appropriate jurisdiction.

## 18. NOTICES, WHERE SENT
Any notice of claim and any other notice or statement in writing
required to be given to the Company under this policy must be given to
the Company at 400 Second Avenue South, Minneapolis,
Minnesota 55401-2499.