IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DALE HELMS and DEBRA J. HELMS,<br><br>Plaintiffs,<br><br>vs.<br><br>OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY,<br><br>Defendant. | 4:16-CV-3010<br><br>MEMORANDUM AND ORDER |

This litigation arises out of a title insurance policy issued by the defendant, Old Republic Insurance Company, relating to 240 acres of land. Pursuant to the policy, the defendant agreed to indemnify the plaintiffs for losses sustained from discoverable defects in title. The plaintiffs submitted a claim under the policy when they discovered that 21.81 acres of their land were actually owned by the United States government. The defendant denied the claim. The plaintiffs then sued the defendant for breach of contract.

This matter is before the Court on the defendant's motion to exclude testimony of Alan Svoboda (filing 47). For the reasons discussed below, the defendant's motion will be denied.

BACKGROUND

The Court's prior Memorandum and Order (filing 47) set forth the background of this case in detail. For purposes of this motion, the relevant facts are as follows. In 2011, the plaintiffs, Dale and Debra Helms, began negotiating for the purchase of 240 acres of land in Furnas County, Nebraska. Filing 46-3 at 34; filing 53-1 at 2. And by August 2012, the

plaintiffs had signed a sales contract and were proceeding to closing. Filing 46-3 at 36. Around this time, the plaintiffs sought to obtain title insurance for the property from the defendant. Filing 53-1 at 2. On September 11, the defendant issued a commitment for title insurance with policy limits of $513,520.00. Filing 53-1 at 10-12. This commitment, in essence, guaranteed that the defendant would issue a title insurance policy insuring against unmarketable title and other encumbrances following closing. Filing 53-1 at 10-12.

A few weeks later, on September 24, 2012, the plaintiffs closed on the property and exchanged $513,520.00 for fee simple title. Filing 46-3 at 39-40; filing 46-1 at 3. And the title insurance policy became effective on October 15. Filing 46-1 at 1-2. But on May 23, 2013, the plaintiffs learned that 21.81 acres of their property were actually owned by the government following a 1940s condemnation proceeding. Filing 53-1 at 1. Because the government's interest in 21.81 acres of their property was not discovered, or disclosed, by the defendant, the plaintiffs filed a claim with the defendant under the policy. Filing 7 at 4. The defendant denied coverage. And the plaintiffs filed this lawsuit, arguing that the defendant breached its contractual obligations by refusing to pay benefits under the policy. Filing 7 at 4.

During the course of litigation, the plaintiffs retained real estate expert Alan Svoboda, who opined as to the property's diminution in value following the discovery of the encumbrance. *See generally* filing 31. Svoboda is a Certified General Appraiser who specializes in the appraisal of agricultural real estate, easement valuation, and appraisal review in rural Nebraska. *See* filing 31 at 50-51.

Specifically, Svoboda's appraisal analyzed the market value of the property under two scenarios: the "before" valuation, and the "after"

valuation. *See* filing 31 at 4. In the "before" valuation, Svoboda assumed the plaintiffs owned all 240 acres of the property in fee simple. Filing 31 at 7-22. That is, Svoboda valued the land at its highest and best use assuming there was no government encumbrance. *See* filing 31 at 8. In the "after" valuation, Svoboda excluded the 21 acres actually owned by the government,[1] and valued the property at its highest and best use under those circumstances. Filing 31 at 23-37. In Svoboda's opinion, the "before" valuation was $1,100,000. Filing 31 at 21. And the "after" valuation was $550,000. Filing 31 at 36. Thus, Svoboda concluded, that the diminution in value was $550,000.00. Filing 31 at 49. The defendant seeks to exclude (filing 47) Svoboda's appraisal and testimony.

DISCUSSION

Generally speaking, the defendant argues that Svoboda's appraisal must be precluded pursuant to Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993) because his opinion is "speculative" and "unreliable." Filing 60 at 1. Specifically, the defendant takes issue with three aspects of the appraisal: (1) the classification of the land in the "before" valuation as pivot irrigable farmland; (2) the failure to consider the plaintiffs' special use permit in the "after" valuation; and (3) the assumption that none of the plaintiffs' land is pivot irrigable in the "after" valuation. Filing 48 at 11-20.

The objective of the *Daubert* inquiry is to make certain that an expert, whether basing testimony upon professional studies or personal experience,

---

[1] The Court acknowledges that the plaintiffs claim 21.81 acres of land were actually owned by the United States Government. *See* filing 54 at 1. But Svoboda's appraisal assumes 21 acres were taken. Although there appears to be some confusion as to the precise acreage owned by the government, that difference is not material for the purposes of this motion.

employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. *Am. Auto. Ins. Co. v. Omega Flex, Inc.*, 783 F.3d 720, 722 (8th Cir. 2015). And in order to be admissible, expert testimony must be both relevant to a material issue and reliable. *Id..* at 591; *see also Margolies v. McCleary, Inc.*, 447 F.3d 1115, 1120 (8th Cir. 2006); *see* Fed. R. Evid. 702.

*Daubert* established a non-exclusive checklist for trial courts to use in assessing the reliability of expert testimony, including whether the theory or technique can and has been tested, whether it has been subjected to peer review, whether there is a high known or potential rate of error, and whether the theory or technique enjoys general acceptance within a relevant scientific community. *See U.S. v. Holmes*, 751 F.3d 846, 850 (8th Cir. 2014) (citing *Daubert,* 509 U.S. at 592-94). And for the purposes of evaluating the relevance of expert testimony, the Court must determine whether the expert's reasoning or methodology was applied properly to the facts at issue. *Daubert,* 509 U.S. at 580. To that end, expert testimony that is speculative, unsupported by sufficient facts, or contrary to the facts of the case, is inadmissible. *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006).

But the defendant has provided the Court with no argument, much less evidence, to suggest that Svoboda's methodology is unreliable. Rather, the defendant's motion asks this Court to exclude Svoboda's testimony because, as the defendant claims, Svoboda's classification, and determination, of the property's highest and best use—in both the "before" and the "after" valuations—rests on "inaccurate" facts.[2] Filing 48 at 11-14; filing 48 at 19.

---

[2] The Court notes that the defendant raises arguments similar to those raised in its partial motion for summary judgment. *See* filing 45. Specifically, the defendant contends that the

4

But the factual basis of an expert opinion goes to the credibility of the testimony, not its admissibility. *Bonner v. ISP Tech., Inc.*, 259 F.3d 924, 929-30 (8th Cir. 2001). Only when an expert's opinion "is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." *Id.* As the plaintiffs correctly point out, however, Svoboda's opinion *is* supported by three well-established appraisal methods: the cost approach, sales comparison approach, and the income approach. *See U.S. v. 47.14 Acres of Land*, 674 F.2d 722, 726 (8th Cir. 1982); *U.S. v. 341.45 Acres of Land*, 633 F.2d 108, 113 (8th Cir. 1980); *see also U.S. v. 2.28 Acres of Land*, No. 8:14-CV-85, 2015 WL 6473590, at *6 (D. Neb. Oct. 27, 2015). And in utilizing those methods, Svoboda relied on the review of soil assessments, water allocation records, zoning ordinances, market surveys, ownership history, and his own inspection of the property. *See* filing 49-1 at 15, filing 49-1 at 20-25, filing 49-1 at 52-53, filing 49-1 at 104-105; *see also* filing 31 at 11. So the Court cannot say, as a matter of law, that Svoboda's appraisal is so "fundamentally unsupported that it can offer no assistance to the jury." *Bonner*, 259 F.3d at 929-30.

Indeed, there can be little doubt that the specialized knowledge of a real estate appraiser would be helpful to the jury in this case. *See id.* In fact, such testimony is likely essential—as the only remaining issue is the appropriate compensation for the defendant's failure to disclose, or discover, the 21-acre encumbrance. And Svoboda is clearly qualified to render his valuation opinion: Svoboda is a Certified General Appraiser, with over

---

diminution in value ought to be determined using the property's actual use at the time the defect was discovered, rather than its highest and best use. Filing 48 at 11-14. But for the reasons already discussed in the Court's prior Memorandum and Order, filing 62, the Court finds those arguments to be without merit.

twenty years of experience in agricultural real estate, and easement, valuation, who utilized three well-established appraisal methods in reaching his ultimate conclusion. Filing 31 at 50-51.

To that end, the defendant is certainly free to rigorously cross examine Svoboda about the accuracy of his underlying information and the purported weaknesses of his ultimate opinion. But the gatekeeper function of *Daubert* is not intended to serve as a replacement for the adversary system. And the defendant's objections go to weight rather than admissibility. Accordingly, the defendant's motion will be denied.

IT IS ORDERED:

1. The defendant's motion to exclude Alan Svoboda's Appraisal (filing 47) is denied.

2. The defendant's motion for oral argument (filing 61) is denied.

Dated this 5th day of February, 2018.

BY THE COURT:

John M. Gerrard
United States District Judge